## McConihe vs. McClurg and others.

The condition of a bond was, that A. M., the maker, was to indemnify the plaintiff from all liabilities which he might incur for the City Bank of Racine, "by accepting their drafts, indorsing their notes, *or otherwise,*" to a specified amount. The condition of a mortgage executed at the same time was similar, substituting for the words "or otherwise," the words "or in any other manner for said bank." The plaintiff subsequently indorsed notes in the following form, sent to him for that purpose: "CITY BANK OF RACINE, Racine, July 7th, 1859. Three months after date I promise to pay to the order of A. M., two thousand dollars, value received, at the American Exchange Bank, N. Y. (Signed) A. M., President:" indorsed "A. M.," and "For City Bank of Racine, W. M., Cashier;" and the notes were then discounted for the use of the bank, which used the funds and failed to meet the notes when due; and the complaint (in an action on the bond and mortgage) alleges that the plaintiff was compelled to pay them. *Held,*

1. That whether the notes were in form strictly the notes of the bank or not, they were within the very letter of the agreement to indemnify.

2. That even if this were not so, yet the defendant A. M., having drawn and forwarded the notes to the plaintiff as in pursuance of the agreement for indemnity, was estopped from setting up any technical defect in their form, to defeat the obligation.

But the plaintiff could not maintain an action on the bond and mortgage for the amount of a note of the bank which he had been compelled to pay, but upon which he had become liable without any request, express or implied, from A. M., and without his knowledge.

The premises described in said mortgage having been subsequently conveyed to one J. M., who notified the plaintiff in writing that he might regard the mortgage as a continuing lien for outstanding notes indorsed by him in pursuance of its conditions, and renewals thereof, to the amount of $8,000, the plaintiff was entitled to enforce the lien to that amount, although the notes of the bank indorsed by him had been several times taken up by renewal notes, before the default in payment alleged in the complaint.

Whether the lien could have been enforced as against J. M. for a greater amount than $8,000, it was not necessary to decide in this case.

APPEAL from the Circuit Court for *Racine* County.

Action on a bond and mortgage executed by *Alexander Mc-Clurg* to the plaintiff, April 10th, 1858. The bond was for a penalty of $20,000, and the condition was, that the maker should indemnify the plaintiff from all liability which he might thereafter incur for the *City Bank of Racine* " by accepting their drafts, indorsing their notes and the renewals thereof, or otherwise" to an amount not exceeding, at any one time, $10,000 and interest thereon at ten per cent. from the date of the bond. The condition of the mortgage was, that said *Alexander McClurg* should indemnify the plaintiff from all liabilities which he might incur by indorsing the notes of the *City Bank of Racine*, or the renewals thereof, accepting the drafts of the said bank, or in any other manner for the said bank," to the amount above mentioned, " according to the condition of said bond," &c. The mortgage was recorded on the day of its execution. The complaint, after stating the above facts, alleges that said *City Bank of Racine*, "for the purpose of procuring the indorsement of the plaintiff, in pursuance of the agreement contained in said bond and mortgage," executed four notes, which are therein set forth. The first is in the following form : " $2000. CITY BANK OF RACINE, Racine, July 7th, 1859. Three months after date I promise to pay to the order of A. McClurg, two thousand dollars, value received, at the American Exchange Bank, N. Y. A. McCLURG, President." Indorsed as follows: " A. McCLURG, Racine, Wis. For City Bank of Racine, WM. McCONIHE, Cashier. I. Mc-CONIHE, JR., Troy, N. Y." The third and fourth notes were precisely similar to the first, except that they were dated respectively August 10th and September 10th, 1859. The indorsements on the third note were also the same as on the first. The fourth note was indorsed as follows: " For value received, I hereby waive demand of payment on the within, protest, and notice of protest. Racine, W., Nov. 15th, 1859. A. McCLURG. For the City Bank of Racine, WM. McCONIHE,

Cas. I. McConihe, Jr., Troy, N. Y." The second note was like the first on its face, except that it was for $3000, and was dated July 12th, 1859. The indorsement upon it was also similar to the first, except that instead of the name of *I. Mc-Conihe, Jr.*, was that of "Isaac McConihe." The complaint further alleges that each of said notes, at about the day of its date, was signed by said *City Bank*, by its agent *Alexander McClurg*, its president, duly authorized for that purpose, and indorsed by said *Alexander McClurg* in his individual capacity, and also indorsed by said bank by its agent, Wm. McConihe, its cashier, duly authorized &c., and then transmitted by said bank to the plaintiff, who resided at Troy, N. Y., for the purpose of having him indorse the same and procure it to be discounted for the benefit of the bank; that plaintiff thereupon indorsed each of said notes before it became due, and procured it to be discounted for the benefit of the bank, and caused the money so obtained to be credited to it; that all of said money was received and used by said bank; that the making, indorsing and discounting of each of said notes, and the appropriation of the money received thereupon, was all done with the knowledge and assent, and by the agency of said *Alexander McClurg*, with the design that the plaintiff should be secured for his liability thereon by said bond and mortgage. The complaint then alleges presentment and non-payment of the several notes, and that the plaintiff became liable to pay and did pay each of them, and became and continued to be the lawful owner and holder of the same; that they remained wholly unpaid; that the legal rate of interest in New York, when they became due, was seven per cent.; that the rate of exchange between the city of Racine and the city of New York was (at the commencement of the action) *one* per cent. It further alleges that there is due the plaintiff from said *Alexander McClurg*, for liabilities assumed by said *City Bank* according to the terms of said bond and mortgage, the several sums named in said notes, with interest on the

same from the day when it became due by its terms, and *one* per cent exchange on each. The remaining allegations and the prayer of the complaint are in the form usual in such cases.

The answer of *Alexander McClurg* put in issue nearly all the important allegations of the complaint.

*James McClurg, Jr.*, who was made a defendant as claiming an interest in the mortgaged premises, alleged to be subject to the mortgage, answered, first, by a general denial; secondly, that before the making and indorsing of the notes mentioned in the complaint, he had become, and from thence had continued to be and still was the owner in fee of the premises described in the mortgage, by deed from *Alexander McClurg*, of which conveyance, ownership and possession, the plaintiff, at the time of the making and indorsing of said notes, had actual notice. "For a third and further defense," the answer alleged that after the making and delivery of said bond and mortgage, and before the making and indorsing of said notes, divers notes were made by the same maker and indorsed by the same indorsers that the notes mentioned in the complaint are therein alleged to have been made and indorsed by, amounting in the aggregate to more than $10,000, and were transferred to the plaintiff by the financial officers of the *City Bank of Racine*, for the same object and purpose mentioned in the complaint, and were indorsed, negotiated and put into circulation by the plaintiff, and the money obtained thereon was appropriated and used as is alleged in the complaint in reference to the money obtained on the notes in suit, and afterwards and before the making and indorsing of the notes in suit, the notes first made, indorsed and negotiated as aforesaid, had been paid or cancelled by or on account of the maker or one or more of the indorsers thereof prior to the plaintiff.

On the trial, a deposition of the plaintiff was read, taken in his own behalf, in which he testified that he resided in the city of Troy, N. Y.; that he was the owner of the bond and mort-

gage and of the four notes mentioned in the complaint; that he became the owner of the bond and mortgage on about the day of their date; and of the notes on the days when they respectively fell due, or very soon thereafter; that the signa· ture and first indorsement on each of said notes were in the handwriting of the defendant *Alexander McClurg*, and the second indorsement on each, and also the signature to the waiver of demand &c., indorsed on the fourth note, was in the handwriting of Wm. McConihe; that the name *I. McConihe, Jr.*, indorsed upon each of the $2000 notes, was in witness's own handwriting, and the indorsement on each note was made before the same was discounted; that witness received each of said $2000 notes from *Alexander McClurg*, or from Wm. McConihe, then cashier of the *City Bank of Racine*, within a few days after their date, for the purpose of getting them discounted in pursuance of the arrangement with *Alexander McClurg;* and after so receiving them witness indorsed them, and delivered them to the Rensallaer Co. Bank to be discounted, which was done, and the whole amount of the proceeds placed to the credit of the *City Bank of Racine* on the books of said Rensallaer Co. Bank, or remitted directly by it to said *City Bank;* that witness became the owner of said $3000 note on the day it became due, or very soon thereafter, by paying it in full with his own money at the Bank of Troy, where it had been previously discounted; that witness did not want this note discounted at the Rensallaer Co. Bank, because his liability there was already sufficiently large, and therefore it was discounted at the Bank of Troy; that he did not indorse that note, because the cashier of the Bank of Troy, being a director in the Rensallaer Co. Bank, and knowing of his indorsement for *Alexander McClurg* in that bank, might bring in question his credit, to his serious detriment in that bank, as well as others in Troy and elsewhere; that Isaac McConihe (witness's father), the third indorser of that note, agreed to indorse it provided witness would protect him from loss, and in pursuance of this

agreement witness gave said Isaac his bond as a security. The bond was put in evidence. It was in the sum of $6,000, and conditioned for the payment of said note by the witness. Witness further testified that said Isaac knew, and had known long before this indorsement, that witness held the mortgage now in suit to protect him from loss by reason of the liabilities he might assume for the *City Bank of Racine*; that there was now due the witness the full amount of the notes in suit, besides interest; that nothing had ever been paid on them; that witness had no other security of any kind to protect him against loss thereon; that he waived the service of a notice of protest on each of said $2,000 notes, for a valuable consideration [the nature of which is described,] and that he was compelled to pay and did pay the owners of them the full amount of each note, as they respectively fell due.—On cross-examination, he said that he received the $3,000 note from the Bank of Troy, where it had previously been discounted; that he did not obtain it from his father, nor did he ever ask his consent, nor was he (the father) ever owner of it, but witness first obtained possession of it by paying it on the day it became due, or very soon thereafter; that he received a notice of non-payment and protest on it, on the day it fell due or a day or two thereafter.

The plaintiff read also the deposition of Wm. McConihe, who testified that he acted as cashier of the *City Bank of Racine* from the spring of 1858 to October 10th, 1859, when the bank closed; that the plaintiff became liable as indorser on the notes of said bank, soon after the date of the mortgage, to the amount of about $6,000, and continued so liable until the bank failed in October, 1859; that at the time of such failure, he was indorser on three several notes made and indorsed by said bank, each for $2,000, dated respectively July 7th, August 10th, and September 10th, 1859; and also for one note of $3,000, made by said bank, dated July 12th, 1859; and that the proceeds of each and all of said notes were used for

the benefit of said bank, in the transaction of its business.— On cross-examination, the witness said that he was a brother of the plaintiff; that his father, Isaac McConihe, of Troy, N. Y., was a stockholder in the *City Bank of Racine*, and became such in 1854, but when he ceased to be a stockholder therein witness could not say.—The plaintiff also read in evidence the bond, mortgage and notes mentioned in the complaint, with the indorsements upon the notes (as above stated), and the notarial certificates attached thereto. The certificate attached to the $3,000 note showed notice of protest to all the indorsers; those attached to the $2,000 notes dated respectively July 7th, and August 10th, 1850, did not show service of any notice of protest. On the note of September 10th, 1859, was indorsed a waiver of demand, protest and notice, on the part of all the indorsers. The defendants objected to the notes, indorsements and notarial certificates as evidence, 1. Because said notes were not the notes of the *City Bank of Racine*, nor within the terms of the conditions of the bond and mortgage. 2. Because of the variance between the complaint and the proof as to the indorsement by the plaintiff of said $3,000 note. 3. Because the proof showed that said $3,000 note constituted no part of the plaintiff's supposed cause of action. 4. Because said $3,000 note was not indorsed by the plaintiff. 5. Because said notarial certificates were insufficient to charge the indorsers upon the notes, and the pretended waiver of demand and notice was insufficient to charge the plaintiff, within the terms and conditions of the bond and mortgage. Objections overruled. The court denied successive motions to dismiss the complaint as not stating a cause of action; "to strike from the case the $3,000 note;" and to dismiss the complaint for the reason that the proofs did not show a cause of action. The defendants then read in evidence a deed of the premises covered by the mortgage in suit, from *Alexander McClurg* to *James McClurg, Jr.*, with full covenants of warranty, dated May 1, 1857, acknowledged October 6, 1858, and recorded three days there-

after. They also proved that the plaintiff had actual knowl-
edge of the transfer of title as early as December 20, 1858.—
*Alexander McClurg*, for the defense, testified that Isaac McCon-
ihe, Sen., was at the *City Bank of Racine* in the summer of
1858, and they made an arrangement with him to get their
notes discounted, he stating that he could get it done in New
York or Troy; they procured a $3,000 note indorsed by W.
T. Van Pelt, which Mr. McConihe took home with him, and
sent the bank the currency; witness could not say whether he
was the drawer of said note; they had been in the habit of
getting discounts in Troy for several years, and Mr. McConihe,
Sen., had acted as their correspondent; the note was renewed
with his (said McConihe's) indorsement several times, and the
$3,000 note in suit was the last renewal; each of the renewal
notes was sent to the old gentleman under the arrangement
with him above mentioned. Witness then introduced several
letters of McConihe, Sen., relating to said series of notes, which
were read in evidence. One dated July 29, 1859, and address-
ed to Wm. McConihe, stated that he had succeeded in getting
the $3,000 note, dated July 12th, renewed at the Bank of
Troy, but that they (the officers of said bank) said it must be
paid, or a great portion of it, when due; and that he (said Mc-
Conihe, Sen.) had written to *Mr. McClurg* that he ought to
give him " some collateral security, by other indorsers or oth-
erwise." Another, dated October 8, 1859, addressed to *Alex-
rnder McClurg*, said : " The $3,000 note of yours, indorsed by
me, will fall due the 12th or 15th inst. I hope you will be
able to pay it, or at least half of it, and give additional securi-
ty for the balance. The great thing with me is security," &c.
The witness then testified that he had never had any corres-
pondence or conversation with the plaintiff about the $3,000
note until after it matured in the fall of 1859, and did not
know that they had conversed about it at all; that the bank
suspended in October of that year; that Mr. McConihe, Sen.,
was a stockholder in the bank at the time it stopped, t  the

amount of $5,000; and that the $3,000 note had no connection with the bond and mortgage in suit.—On cross-examination of this witness, plaintiff proved, and introduced in evidence, a letter to him from *James McClurg, Jr.*, dated January 1, 1857, as follows: "You will consider the mortgage now held by you on property in Racine (and which I now have a deed for) as good and binding for your indorsements on the notes of the *City Bank of Racine*, and the renewals of the same, to the amount of $8,000, as heretofore." An objection by defendants to this evidence was overruled. The witness also admitted that the bank received the avails of all the notes mentioned in the complaint. On his re-examination, witness stated that notes made and indorsed in the same form, by the same persons and for the same purpose as the three $2000 notes in suit, exceeding in amount $10,000, were in like manner negotiated and paid by the *City Bank of Racine*, between January 1st and July 7th, 1859. The remainder of the evidence, which was somewhat voluminous, it is not deemed important to state here.

The court found the facts as alleged in the complaint, and held that the mortgage in suit was a valid lien upon the premises described therein for the amount found due upon the notes and bond, and that any lien or interest of any of the defendants upon or in said premises was subject to said mortgage; and that the plaintiff was entitled to judgment of foreclosure and sale for the amount found due, to wit, $11,549.33. Judgment accordingly. The defendants excepted to the finding of facts, except as to the facts admitted in their answer. They also excepted to the finding on the ground that it did not duly pass upon the issues presented by the special defenses set up in the answer of *James McClurg, Jr.*; and appealed from the judgment.

*George B. Judd*, for appellants, argued, among other things, 1. That the *City Bank of Racine* had no power to make or put into circulation the promissory notes in suit, in order to obtain

a credit or borrow money; nor had its officers, acting as its agents and the agents of its stockholders, any such power—citing R. S. ch. 71, secs. 4, 10, 18; *Delafield v. State of Illinois*, 26 Wend., 192, 221; 7 Wis., 59, 78, 79; 10 id., 230, 235–6; 15 Johns., 358; *Safford v. Wyckoff*, 1 Hill, 11; *Smith v. Strong*, 2 id., 241; *Swift v. Beers*, 3 Denio, 70; *Leavitt v. Palmer*, 3 Coms., 19, 36, 37; *Talmage v. Pell*, 3 Seld., 328, 347–8; *Bank Comm'rs v. St. Lawrence Bank*, id., 513; *Leavitt v. Blatchford*, 17 N. Y., 521, 538–9; 18 Ill., 563; 7 Wend., 276; *Hayden v. Davis*, 3 McLean, 276; 3 Kern., 309; 3 Barb., 10; 5 id., 10; 10 Paige, 110; 9 id., 477; 3 Barn. & Ald., 1–12; Story on Prom. Notes, § 74; Edwards on Bills, 75. A citizen who deals with a corporation, or who takes its negotiable paper, is presumed to know the extent of its power, and deals with it at his peril. *Mechanics' Bank v. Drovers' Bank*, 16 N. Y., 125–30. 2. That neither of the notes in suit is in form or substance the note of the *City Bank of Racine*, but they are all notes of *Alexander McClurg*. *Moss v. Livingston*, 4 Coms., 208; *Barker v. Mechanics' Ins. Co.*, 3 Wend., 94; *Hills v. Butler*, 8 Cow., 31; *Stone v. Wood*, 7 id., 453; *Taft v. Brewster*, 9 Johns., 334; *White v. Skinner*, 13 id., 307. 3. That plaintiff did not indorse the $3000 note, and of course did not become liable on it as indorser; as to that note he was a mere volunteer, without authority or request from any one having a right to give it. *Beach v. Vandenburgh*, 10 Johns., 361. 4. That the second defense of *James McClurg, Jr.*, was fully sustained by the proof, and hence plaintiff had as against him, no lien on the premises. *Truscott v. King*, 2 Seld., 147, 159; 7 Cranch, 34. 5. That the letter of *James McClurg, Jr.*, read in evidence for plaintiff, was not an original undertaking of said *James*, but merely collateral to the supposed liability of the bank, and was void, (1) For want of consideration. (2) Because it purported to surrender an interest in land, or to grant a power over land, and yet was n a deed or conveyance as required by law. R. S., ch. 106, sec. 6; ch. 86, secs. 1, 8, 35, 39. (3) Because it was a mere

offer, and no notice was given of its acceptance. *Mussey v. Rayner*, 22 Pick., 223. Again, no notice was given by plaintiff to said *James* (who was at most a mere security), of the amount of liabilities incurred or assumed by the plaintiff from time to time under the instrument. *Cremer v. Higginson*, 1 Mason, 323, 339 ; *Douglass v. Reynolds*, 7 Peters, 125, and cases there cited. Nor was any notice of the default of the bank given him. 6. The instrument in question is not a continuing contract beyond $8000 in amount of the notes in existence at its date, and a single renewal not exceeding that amount. The notes in suit are the second if not the third set made after the date of the instrument. More than $8000 of notes like those in suit, indorsed by the plaintiff, had been paid by the bank between January 1st and June 7th, 1859. The liability of a surety is *strictissimi juris*. *Fellows v. Prentiss*, 3 Denio, 512, 523 ; *Walrath v. Thompson*, 6 Hill, 540; 8 Johns., 119.

*Finches, Lynde & Miller*, to the point that the notes in suit were the notes of the bank, cited 1 Parsons on Notes & Bills, 97, 168 ; *Despatch Line v. Bellamy Man. Co.*, 12 N. H. 205 ; *McCall v. Clayton*, Busbee, 422 ; *Proctor v. Webber*, 1 D. Chip., 371 ; *Roberts v. Button*, 14 Vt., 195 ; *Shelton v. Darling*, 2 Conn., 435 ; *Johnson v. Smith*, 21 Conn., 627 ; *Hovey v. Magill*, 2 id., 680; *Sanford v. Wyckoff*, 1 Hill, 11 ; 4 id., 442 ; *Farmers' & Mechanics' Bank v. Troy City Bank*, 1 Doug. (Mich.), 457. 2. To the point that *Alexander McClurg* would at least be estopped from denying that they were the notes of the bank, they cited *Cary v. Wheeler*, 14 Wis., 281 ; 2 Smith's L. C. (5th Am. ed.), 642 ; *Stephens v. Baird*, 9 Cow., 274; *Dewey v. Field*, 4 Met., 384 ; *Presb. Congregation v. Williams*, 9 Wend., 147 ; *Pickard v. Sears*, 6 A. & E., 469 ; *Bushnell v. Church*, 15 Conn., 419 ; *Brown v. Wheeler*, 17 id., 346 ; *Roe v. Jerome*, 18 id., 138 ; *East Haddam Bank v. Shailor*, 20 id., 18 ; *Cowles v. Bacon*, 21 id., 451 ; *Hicks v. Cram*, 17 Vt., 449 ; *Howes v. Spicer*, 23 id., 508 ; *Davis v. Bradley*, 24 id., 55 ; *Bank of Wilmington v. Wollaston*, 3 Harrington, 90 ; *Ackla v. Ackla*, 6 Barr, 228. 3. To the point

that the bank had authority to execute these notes, they cited *Rockwell v. Elkhorn Bank*, 13 Wis., 653; *Curtiss v. Leavitt*, 15 N. Y., 8; *Barnes v. Ontario Bank*, 19 N. Y., 152; *Bank of Genesee v. Patchin Bank*, 3 Kern., 309. 4. To the point that no notice of any conveyance of the mortgaged premises, however *bona fide*, executed after the execution and recording of the plaintiff's mortgage, could impair its lien, they cited *Crane v. Deming*, 7 Cow., 387 ; *Moroney's Appeal*, 3 Am. Law Reg., 169 ; *Ter Hoven v. Kerns*, 2 Barr, 96 ; *Parmentier v. Gillespie*, 9 id., 86. No change of the securities will release the title of the mortgagee, so long as the original indebtedness, or any portion of it, remains uncancelled, unless there is clear and satisfactory evidence that the substituted securities were intended to supersede the mortgage security.   10 N. H., 424. No presumptive payment will be allowed to operate, unless it is apparent that this was the intention of the parties; as where one promissory note is given for another.   *Watkins v. Hill*, 8 Pick., 522 ; *Bank v. Rose*, 1 Strob. Eq., 257 ; *Dunshee v. Parmelee*, 19 Vt., 172 ; *McDonald v. McDonald*, 16 id., 630 ; *Bolles v. Chauncey*, 8 Conn., 389 ; *Pomroy v. Rice*, 16 Pick., 22.   The same rule has been repeatedly applied to banking paper, when it is the custom to renew from time to time.   *Enston v. Friday*, 2 Rich., 427 ; *Handy v. Com. Bank*, 10 B. Mon., 98 ; *Smith v. Prince*, 14 Conn., 472.   Not even the change and substitution of parties will effect the mortgage security.   *N. H. Bank v. Willard*, 10 N H-, 210; *Pond v. Clarke*, 14 Conn., 334.   See also *Rogers v] Traders' Ins. Co.*, 6 Paige, 583 ; *Rowan v. Sharpe's Rifle Co.*, 29 Conn., 282.

*By the Court*, DIXON. C. J.   The condition of the bond is, that the defendant *Alexander McClurg* was to indemnify and save the plaintiff harmless from all liabilities which he might incur " for the *City Bank of Racine*, by accepting their drafts, indorsing their notes, and the renewals thereof, *or otherwise*, to an amount not exceeding the sum of ten thousand dollars."

The language of the mortgage, as to acceptances and indorsements, is the very same, to which is added, "or in any other manner for the said bank." Without standing, therefore, upon the question whether the notes, in the form executed, were in strictness the notes of the bank, or of *Alexander McClurg*, its president, we think it clear as to the three $2000 notes, that they are within the very letter of the obligation. They were drawn at the office of the bank, executed by *Alexander Mc-Clurg*, its president, indorsed by him "for the *City Bank of Racine*," and by William McConihe, cashier, transmitted to the plaintiff in pursuance of the bond of indemnity, indorsed and negotiated by him, and the money, the proceeds, actually received by the bank and appropriated to its use. Whatever form, then, the notes may have taken, whether that of the president individually, or of the bank, they were essentially transactions of the bank, and as such within the letter of the agreement to indemnify.

But should we be wrong in this conclusion, we are still of opinion that the ground of estoppel put by the counsel for the plaintiff, furnishes an incontestable answer to this branch of the defense. Having drawn and forwarded the notes to the plaintiff as in pursuance of the agreement for indemnity, and as those for which the plaintiff was secured by the bond and mortgage, the defendant *Alexander McClurg* cannot now change his position, or be allowed to take refuge behind any alleged technical defect in the form of the notes.

But as to the $3000 note, we have arrived at a different conclusion. After a careful consideration of the evidence, we are of opinion that it is not one of those provided for, or intended so to be, by the bond of indemnity. It cannot be contended that the plaintiff was at liberty, under the bond, to indorse any and all notes of the bank which might happen to be in circulation in the community where he resided, and make *Mc-Clurg* responsible for their final payment. It was only such notes as came to him with the express or implied assent of

*McClurg* that he was authorized to indorse. In other words, there must have been something either expressly or by implication amounting to a request on the part of *McClurg*, that the plaintiff should indorse the particular note, before *McClurg* can be charged under the bond. Or if this is not so, at least it must not appear that he indorsed it without the knowledge or approbation of *McClurg*. Such, we infer from the testimony, even that of the plaintiff himself, was the case as to the $3000 note. The plaintiff indemnified Isaac McConihe, Sen., and assumed its payment, without the knowledge or consent of *McClurg*. It was not made and sent to him as one of the notes covered by the bond; and his assumption of payment was purely voluntary, having no connection whatever with the bond. If he acted at the request of any one, it was at the request of Isaac McConihe, Sen., and not of *McClurg*. Under such circumstances, and by the course of dealing disclosed by the case, he cannot charge *McClurg*. In his own testimony, given upon the trial, he says as to the three $2000 notes, that they were received, indorsed and procured to be discounted by him, "in pursuance of the arrangement with said defendant *Alexander McClurg*," and in this he is sustained by the other proofs in the case. But as to the $3000 note he says no such thing; and if he had, the statement would have been in direct conflict with the other evidence. The substance of his testimony upon this point is, that he assumed the payment by indemnifying Isaac McConihe, Sen., the indorser, and that when the note became due he paid it. If he had done so "in pursuance of the arrangement" with *McClurg*, is it probable that, as a witness upon the stand, testifying in his own behalf, he would have omitted a fact so much and so obviously for his interest? It seems to us not. Again, it appears from the letters of Isaac McConihe, Sen., given in evidence, that he indorsed the $3000 note and those for which it was given in renewal, in pursuance of an arrangement made between himself and the officers of the bank, and that that arrangement had no relation

whatever to the bond of indemnity given to the plaintiff. With these facts before us, we cannot for a moment doubt that it was not in the power of the plaintiff, by indemnifying the indorser or voluntarily taking up the note, to shift the burden of its ultimate satisfaction upon *McClurg*, under the bond. This note, therefore, should have been excluded in the computation of the amount due upon the bond and mortgage; and, in order that the requisite modification may be made, the judgment must be reversed, and the cause remanded, directing the entry of judgment for the sum due for principal and interest upon the other notes.

As this modification reduces the plaintiff's claim below the sum of $8000, for which the defendant *James McClurg, Jr.*, consented that the mortgage might remain as security, the question of the continuance of the lien as against him for a greater sum, or that fixed by the bond, is out of the case. The mortgage is clearly good against *James McClurg, Jr.*, for the sum to which he assented.

Judgment reversed, and cause remanded with directions as above stated.